Good morning, I'm Blaine Connaughton, I represent Antonio Gallardo. Mr. Gallardo is currently serving a 136 month sentence at the time of the incidents alleged in the indictment and he was employed as a farm laborer in an apple orchard in Yakima. There are two issues that are the focus of this appeal, one is his motion to withdraw his plea of guilty which was denied and the second is the government's failure to support the plea agreement when the judge decided to deny the motion to withdraw. With respect to the motion to withdraw, I think it's clear from the record that we have that Mr. Gallardo very reluctantly entered his plea. In fact, he addressed the court and indicated he thought that he had been entrapped and there is a section of that that's in my brief. He did enter the plea. He wants to withdraw it and what reason did he give for withdrawing it, that he was entrapped? Well, that was, yeah, basically. And you say, if you say I was entrapped, that the court has no option except to say, fine, please go on. No, I think they have a duty, however, to investigate to see if there was a prima facie case that would get the defense of entrapment to the jury. The court did not do that. It basically ignored the issue. Is that because the government is special in some way? I mean, generally that's not true, right? If somebody pleads guilty to a set of known facts and then comes back later and says, well, I actually think under these facts I could probably win a trial, so I want to withdraw my plea, that's not the case. Well, it's clearly discretionary, but I think it would represent a fair, I think the standard is a fair and just reason to withdraw the plea. So you're arguing about entrapment. You're saying in general if somebody comes in and says, oh, I was mistaken, I really think that I really could win a trial and I want to try it. Well, I think the court has an obligation to investigate whether that. But there are people who plead guilty who might be able to win a trial. That's true. But in this case, I don't, the other thing is I don't believe that there was any evidence suggesting there was any prejudice to the government. And it was done before sentencing. I mean, we filed a motion about three weeks prior to the sentencing. So it seemed to me that at a minimum there should have been some investigation as to whether or not this would get to the jury. Basically, in terms of the facts concerning the allegations, we have cherry-picked statements submitted by the prosecutor of what they believed that they could prove. But there was no real inquiry beyond that by the court. So I think that that did represent a fair and reasonable argument. And further, I don't think there's anything to suggest that the government was in any way prejudiced. They've never maintained that or represented that they would be prejudiced in any way had this matter simply proceeded to trial. Basically, Mr. ---- Are you arguing, therefore, that basically whenever somebody wants to withdraw a plea and there's no prejudice, they should be able to do it? No. Well, what's the difference, then? Well, in this case, he raised a defense, which I think is required by the case law. You can't simply come in and say, I just changed my mind. But if you ---- I changed my mind not because I didn't know about the defense, but I've now decided that I want to go to trial on the defense. Well, the other component of it is, obviously, that the probation ---- It makes sense. I never understand why they don't take the withdrawal, but they didn't take it. And under the standard of fair and just, why? And our case law, is there any basis for compelling the judge to take it? Well, I think that there's a basis to compel the judge to make an inquiry with respect to whether or not this represented a fair and just basis. I don't think that was ever explored. I mean, he may have come to the same result if he had have done that, but ---- One of the different aspects of this case and others is, it seems to me that the question of entrapment was pretty adequately explored at the time the plea was taken, wasn't it? Well ---- He got into the factual basis, and he got into this, I was trapped and trapped, and what does that mean? And then there was extensive questioning on that. They got the lawyer into the game exactly when entrapment was being discussed, and the lawyer said, he's taken a look at this. They have their audio tapes and video tapes, and he's satisfied that the factual basis is there and this plea is appropriate. So it seems that at that point, he's getting a quid pro quo for pleading, and the lawyer even says, the judge looks into this, the lawyer says. Well ---- So it looks to me as though the judge did a careful job in looking at this, taking the plea. We have two different judges. The judge who accepted the plea was not the judge who sentenced and who heard the argument. But the judge who took the ---- what I'm getting at is the judge that took the plea examined this very carefully, and the lawyer bought into this. And, you know, you don't even have to read between the lines. The lawyer is saying, there's no entrapment here, Judge. Well, that goes to the next question, which is the ---- The government's failure. Yes. And I think the discussion about the entrapment at that initial hearing, you know, represented Mr. Gallardo's position that basically he was set up, which he was. And then at the time that probation does its investigation, of course, he represents essentially the same thing. I sat in on the hearing, or on the meeting, and lo and behold, we have the coming back that he doesn't accept responsibility. And, of course, at that point, the motion was filed, and the safety valve issue in terms of his complying, you know, meeting with the government's agents and disclosing information to support that component of the safety valve was actually never addressed, because the motion was filed at a time about three weeks prior to sentencing when there would have been a meeting. Was there ever a meeting? There never was. There never was. I think there had been scheduled a meeting with the agents and myself and Mr. Gallardo, but then we filed this motion after getting the report back from probation, and then that was heard at the same time that the sentencing. You filed this motion, this motion being ---- I'm sorry, the motion to withdraw the plea. So your motion is ---- is that what interrupted the attempt to ---- Well, that interrupted it, right. And, of course, reading between the lines, with probation coming back with their position, it's at least been my experience that the government's position, position of probation is usually one and the same. So what exactly did the government do or not do that you say violated the plea agreement? Well, basically, they filed, I think, a memorandum supporting that the position of probation, that somehow Mr. Gallardo did not accept responsibility, and, therefore, he should not receive a three-point ---- In the plea agreement, though, the government promises to do things if Gallardo provides complete and truthful information. That's true. It will no matter what happens. Come hell or high water, it's if. That's true. All of a sudden, the if fails to materialize, and so the government says we're off that hook. But I'd also point out in the plea agreement at page 3, paragraph 1, it says if Mr. ---- if Antonio Gallardo pleads guilty and continues to demonstrate a recognition and affirmative acceptance of personal responsibility for his criminal conduct, the U.S. will recommend a three-level reduction. But that's not what you're arguing about, is it? What you're arguing about is the next paragraph. Am I wrong? I thought you were ---- Right. But I think ---- I guess what I'm pointing out here is they know from this acceptance of the plea that he's saying that I was set up. Yeah, I did it. It was stupid. I was set up. And that's essentially what he's telling probation. And so when probation says, well, I don't care if you're set up or not, you're not accepting responsibility, and the government goes and supports that, I would say that ---- But that's a different issue than the safety valve issue, which is what you're asking for. And the language is actually quite obviously different. One of them does say that the United States will recommend, and the other one doesn't say that. Well, I'm arguing both, the acceptance of responsibility that the ---- That was acceptance of responsibility. Right. Because that was the three points, and then the safety valve would have followed that had there been a meeting. So actually that ---- To not get acceptance of responsibility and to still qualify for the safety valve? Well, theoretically, I suppose. But I think that's doubtful. I'm sorry. I don't see where in your brief you're arguing about the ---- about the three-level reduction as opposed to the safety valve. I didn't understand that you were. I'm looking at it now. I don't see that you were. Well, I think my focus was on the acceptance of responsibility, because that was the three-level reduction that was required at sentencing based upon what probation said. Well, the probation report also said, I think in the addendum that he could not qualify for the safety valve because he had not been forthcoming to the probation officer. And therefore, if he were forthcoming, he would have potentially had to lie about everything he'd ever said. Right. I think that usually they meet with the agents on the safety valve issue, not with probation. The only argument I see you made is in the present case, this is on page 14 of your brief, the government actively opposed the application of the safety valve through its sentencing memorandum. It is a contradiction to the provisions of the plea agreement that Mr. Clark would get the benefit of the safety valve. The agreement, page 3, paragraph 2, I don't see any argument about the other piece. Well, that's probably something that I should have ---- I guess I was treating them basically as one and the same because ---- That's what I understood you to be doing. I understood it that way. Because without one, you don't get the other. The government argued against acceptance of responsibility. The government was arguing against the safety valve application. Right. Because presumably it said the same thing. But the government at the hearing, which I found interesting, at the hearing, at the sentencing hearing, and in its ---- I guess it was at the hearing, the government stood up and said, we recommend 70 months. Yeah. 70 months could only work if the safety valve applied. Right. The judge wouldn't have any, really, any discretion if he didn't find acceptance of responsibility and then go to safety valve. So the saying 70 months was, to me, essentially meaningless because they'd already argued against the acceptance of responsibility, which, in effect, eliminates safety valve. So the judge certainly isn't going to impose 70 months. He'd be reversed. It's your argument, which I didn't understand from the briefs, but it is that the government didn't give him a chance to provide the information? No. No. We filed the motion. I suppose I could have proceeded with that. Well, I don't really think I could have proceeded with having him meet with them. Once you filed the motion, that was the end of that. Yeah. I don't think I could have scheduled it, because if we did, if the motion was granted, then we'd be setting ourselves up for ---- But you're not arguing that it could have been done sequentially then. In other words, that until the withdrawal motion was determined, you really couldn't have cooperated, so therefore, you shouldn't be charged for failing to cooperate. You should have first been ---- But that's not what you're arguing, that, i.e., that the judge should have gone, dealt with the withdrawal motion first and then given you a chance to cooperate. I think that probably would have been ---- I don't know that it would have been ---- would have got fruitful. But I think that, yeah, we never really had that opportunity to address the safety valve due to the fact that, you know, acceptance of responsibility was denied and the motion was denied. Your timing. You impressed the district court judge, though. I didn't. On the safety valve issue. There's no mention of the sentencing. I was focused on the, I think, on the withdrawal and I guess to a lesser extent the acceptance, but that seemed to be a foregone conclusion. Okay. Your time has expired, but we'll give you an opportunity to respond. Thank you. If you care to take it. Good morning, Your Honors. Jane Kirk for the United States. May it please the Court, counsel. I was counsel all through this case. We did enter a plea agreement with the defendant prior to a change of plea hearing, and in that plea agreement, the government reserved the right to object to the defendant's claim that he had accepted responsibility if he didn't clearly accept responsibility throughout the entire proceeding. In fact, even though he accepted responsibility by changing his plea, when he met with probation, he was backpedaling on the extent of his responsibility, extent of his responsibility, and when the probation report came out, it was at that juncture that we determined to oppose the acceptance of responsibility because of the statements mitigating his responsibility by the defendant, and it was almost, I didn't know anything. At that point, I submitted documentation to counter that position. At sentencing, then, pursuant to the plea agreement, I also recommended 70 months, because that's, by the plea agreement, that's what I was required to do. There was... Why did you recommend 70 months? Well, I felt I was hemmed in by the plea agreement. The language was very clear that the government will recommend a sentence of 70 months. As long as the guideline is number 27. Or above. The guideline was 32. Right. It was that or above. How is it possible, though, how is it possible for the district court to give a 70-month sentence unless he qualified for the safety valve? From the submissions to the court at that time, it was not possible. Did you believe, and was the government's assessment that Mr. Gallardo qualified, would likely qualify for the safety valve? Excuse me. His intent was to attempt to qualify. However, as... My question was the government. What was the government's tentative assessment? It must have been that he, that it appeared as though he could qualify, at least. He had, it was the government's assessment that he had qualified under four, the first four qualifications, but the fifth, he had not provided all information to the government. So that was outstanding. So then when he filed his motion to withdraw, there was then no opportunity for him to come forward and meet with the government and relay whatever information he had? There was still the opportunity. It would be counterproductive for him to do so. But at all times, that opportunity was available to him. He doesn't have to even meet with the agents. He can send a letter that has been accepted in the past. But he didn't make any of those, he didn't take any of those actions. And I think that... Could the government relate to him sort of what the area of inquiry was that they were concerned with or would like him to respond to or anything? I don't believe so, Your Honor. Because Mr. Panatton is correct. We had set up a meeting, and that meeting never occurred. It never occurred. Right. Do you have anything else? No, I don't. Thank you. Thank you, counsel. Do you have anything else you'd like to tell us? I don't think I do, Your Honor. Seems like another case of a client making it difficult for a lawyer to do a good job for him. The case just argued is ordered submitted. And we'll move on.
judges: Trott, Paez, Berzon